# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

|  |  |
|---|---|
| FREDERICK ROZO,<br><br>       Plaintiff,<br><br>   v.<br><br>PRINCIPAL LIFE INSURANCE COMPANY,<br>PRINCIPAL FINANCIAL GROUP, INC.,<br><br>       Defendants. | Case No.:  4:14-cv-00463<br><br>**CLASS ACTION COMPLAINT (ERISA)** |

## PRELIMINARY STATEMENT

1.      Guaranteed Investment Contracts (ōGICsö) are a financial product offered by insurance companies.  Investors in GICs ó in this case retirement plans ó pay money in exchange for a contract promising a return on the investment.  A GIC is a type of group annuity contract.

2.      Defendants Principal Life Insurance Company and Principal Financial Group, Inc. (collectively, ōPrincipalö or ōDefendantsö) sold GICs to retirement plans in which Plaintiff and members of the proposed class are participants.

3.      Principal operates the Principal Fixed Income Guaranteed Option, also known as the Principal Fixed Income Option (ōFixed Income Optionö).  Retirement plans in which Plaintiff and the proposed class are participants and beneficiaries (ōPlansö) invest in the Fixed Income Option pursuant to a GIC that governs the relationship between the Plans and Principal, referred to herein as the ōContract.ö  The Contract enables Principal to set its own compensation as a service provider to the Plans.  Principal has exercised its discretionary authority to retain unreasonably large and/or excessive profits rather than crediting the participants and beneficiaries of the Plans with appropriate returns.

4.     Participants in Plans that invested in the Fixed Income Option are credited at an interest rate which Principal can set and change in its sole discretion.  The rate is applied to all participants in all Plans that invest in the Fixed Income Option.  The Contract does not specify the rate, nor does it promise that the rate will not go below a certain level, nor does it promise that the rate will remain in effect throughout the life of the Contract.

5.     Throughout the relevant time period, Principal invested the assets it received pursuant to the Contract as it chose, and retained for itself the difference between the investment earnings of those assets and the interest it chose to credit to the Plans, otherwise known as "the spread."  As stated in a Principal Annual Meeting 10K Report, "[a]ssets invested in GICs and funding agreements generate a spread between the investment income earned by us and the amount credited to the customer."  Even while its earnings on the money paid by the Plans were in the hundreds of millions of dollars, Principal reduced the amount credited to the Plans and their participants.  Principal also retained the spread in addition to an already high disclosed fee for providing administrative and/or recordkeeping services to Plans.  In other words, the Contract allowed Principal to set its own compensation as a service provider to the Plans, and to collect unreasonable and/or excessive fees from participants.

6.     The Contract is a plan asset of the Plans holding it.  Because Principal exercised discretionary authority over the administration of the Contract, including setting the credited rate, it owed fiduciary duties to Plan participants with respect to the Contract.  Principal breached its fiduciary duties, and engaged in transactions prohibited under the Employee Retirement Income Security Act of 1974 (ERISA), by unilaterally setting its own compensation and by charging unreasonable and excessive fees incident to administering the Contract.

7.     As a result of Principal's actions, the Plans' assets were diminished.  Plaintiff seeks damages and equitable relief on behalf of the Class.

## JURISDICTION

8.     Plaintiff brings this action pursuant to ERISA §§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2), (3).  This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and pursuant to 28 U.S.C. § 1331

- 2 -

because this action arises under the laws of the United States.

## VENUE

9.      Venue lies in the Southern District of Iowa pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because one or more of the Defendants resides or may be found in this District and/or the breaches alleged took place in this District.  Venue is also proper pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## THE PARTIES AND THE PLANS

10.     At all relevant times, Plaintiff Frederick Rozo has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Western Exterminator Company Employees' 401(k) Profit Sharing Plan ("the WE Plan").  During 2008 to 2013, Mr. Rozo directed that assets allocated to his account in the WE Plan be invested in the Fund.  Mr. Rozo resides in Rancho Santa Margarita, California.

11.     At all relevant times, the WE Plan was an employee pension benefit plan within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).  It was an individual account plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

12.     At all relevant times, Defendant Principal Life Insurance Company ("Principal Life") was a wholly-owned subsidiary of Defendant Principal Financial Group ("PFG"), operating as an insurance company.  PFG is headquartered in Des Moines, Iowa.

## FACTS

13.     Principal offers Plans that invest in the Fixed Income Option a so-called "Guaranteed Interest Rate" defined as "the rate, which when credited and compounded daily, will produce the effective annual interest rate we Announce to you for the Guaranteed Interest Fund to which the Applicable Schedule relates."  A Guaranteed Interest Fund is defined as the repository of deposits and interest established for each Plan.  The Contract does not specify the Guaranteed Interest Rate or set forth a methodology for determining the rate, or set a floor below which the Guaranteed Interest Rate cannot go.

14.     The Contract also provides for a "Composite Crediting Rate," which is declared for each Deposit Period (the period of time within which deposits to a Guaranteed Interest Fund can be made, itself set forth in a schedule to the Contract).  The Composite Crediting Rate is calculated using a methodology set forth in the Contract, which is based on the aggregate value and expected value of Guaranteed Interest Funds.  Expected values are determined by Principal based on net cash flows accumulated with interest at the Guaranteed Interest Rate.  The Contract does not set a floor below which the Composite Crediting Rate cannot go.  The Guaranteed Interest Rate and the Composite Crediting Rate are referred to in this Complaint collectively as the "credited rate."

15.     The Contract provides that each Plan investing in the Fixed Income Option has a "Guarantee Period," set forth in a schedule to the Contract.  However, Principal is not obligated to maintain the credited rate throughout the Guarantee Period.  Principal is only required to maintain the Composite Crediting Rate from the first day to the last day of the Deposit Period, which in the WE Plan is six months.  Under the Contract, Principal appears to have discretionary authority to change the Guaranteed Interest Rate at any time.

16.     Nevertheless, Principal markets the Fixed Income Option to potential investors as providing "[a] declared interest rate – you know in advance what interest will be earned."

17.     The Contract provides for a delay of 12 months or payment of a surrender charge if a Plan withdraws its interest in the Fixed Income Option.  There are also limitations on participants' abilities to transfer funds to competing investments in their Plans.  Specifically, participants are subject to an "Equity Wash," meaning they must first transfer funds to a non-competing investment option for a stated period of time.  Essentially all fixed-income and cash equivalent investments are defined as competing investment options, so if they no longer wish to invest in the Fixed Income Option, participants are forced to switch to a higher-risk investment first.  Thus, participants in the Plans are highly vulnerable to Principal's decision to change the credited rate.

18.     Funds paid to Principal by Plans pursuant to the Contract are deposited and held in Principal's general account, and largely invested in bonds and other low-risk investments.

- 4 –

The Contract does not place any limits on Principal's ability to invest assets held in its general account.

19.     Principal makes billions of dollars annually from investment of assets held in its general account.  Principal Life's annual reports state that net investment income in 2010 was $3,063,216,474; net investment income in 2011 was $2,978,691,607; net investment income in 2012 was $2,898,475,365; and net investment income in 2013 was $2,739,450,935.

20.     Meanwhile, Principal reduced the credited rate to Plans continuously and precipitously between 2008 and 2014.  In June 2008 the net crediting rate (crediting rate less fees for administrative and recordkeeping services) was 3.95%; by June 2010 it had dropped to 2.55%, and by June 2013 it had dropped to 1.35%.  Thus, while Principal's net investment income from its general account declined by about 10.5% from 2010 to 2013, Principal unreasonably reduced the net crediting rate and plan participant earnings by about 47% over the same period.  The difference between general account investment earnings and interest credited to the Plans was pure profit to Principal.  Upon information and belief, during the relevant time period Principal made between $90 and $160 million annually from GICs held by retirement plans.

21.     Plan documents and promotional materials fail to disclose that Principal can and does retain the difference between the interest rate it chooses to credit to the Plans and its actual investment earnings on the funds it invests from the Plans.

22.     In addition to the undisclosed compensation it received based on the spread between the credited rate and actual investment earnings, Principal required Plans to pay a fee for administrative and recordkeeping services.  The amount of this fee is estimated in promotional materials for the Fixed Income Option as 65 basis points.  The Contract is vague with respect to what services participants receive in exchange for this fee, and it is excessive.

23.     Notwithstanding the inclusion of "Guarantee" in its name, the Contract does not guarantee payment of any particular benefit to Plans or their participants.  Instead, it promises an unspecified rate of return for a period of time, but investment risk incident to the Contract is borne by the Plans because Principal can change the credited rate in its sole discretion, and

Principal's investment decisions and actions affect the value of the Contract.  Indeed, the actual and realized benefit to the Plans is, by the terms of the Contract itself, fundamentally contingent on investment decisions made by Principal.

24.    ERISA defines a "fiduciary" as anyone who exercises authority or control over the management or disposition of plan assets.  29 U.S.C. § 1002(21)(a).

25.    The Contract itself is a plan asset:  It is entered into by the Plans in order to provide income to participants.

26.    The Contract gives Principal discretionary authority to determine the Guaranteed Interest Rate and the Composite Guaranteed Rate.  Thus, Principal is a fiduciary of the Plans with respect to its management and administration of the Contract.

## CLASS ACTION ALLEGATIONS

27.    Plaintiff brings this action as a class action pursuant to Rules 23(a) and 23(b)(1) or, in the alternative, 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of similarly situated persons ("the Class"):

>    All participants in and beneficiaries of defined contribution employee pension benefit plans within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), who had funds invested in the Fixed Income Option from six years before the filing of this action until the time of trial.

28.    The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are, at a minimum, thousands of members of the Class.

29.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among such questions are:

(a)    Whether Defendants are parties in interest with respect to the Plans;

(b)    Whether Defendants are fiduciaries of the Plans;

- 6 -

(c)     Whether the Contract gives Defendants discretionary authority to determine the amount of their own compensation;

(d)     Whether Defendants set the credited rate artificially low for their own benefit rather than for the benefit of Plans and participants; and

(e)     Whether the compensation paid to Defendants under the Contract is unreasonable or excessive.

30.     There are no substantial individual questions among the Class claims on the merits of this action, and Plaintiff is not aware of any conflicts between himself and the putative Class members.

31.     Plaintiff's claims are typical of the claims of the members of the putative Class, as Plaintiff and all other members of the putative class were harmed by Defendants' wrongful conduct.  Plaintiff is aggrieved by the prohibited transactions and breaches of fiduciary duties he and all other Class members have suffered at Defendants' hands, and is intent on seeing such wrongs remedied.  Neither Plaintiff nor his counsel have any interests that might cause them to refrain from vigorously pursuing the claims in this Class action.  Thus, Plaintiff is an adequate representative of the Class.

32.     Class certification of Plaintiff's Claims for Relief is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

33.     In the alternative, class certification of Plaintiff's Claims for Relief also is appropriate under Fed. R. Civ. P. 23(b)(3) because common issues of law and fact predominate over questions affecting only individual members of the Class.  The only individualized issues will be the amount of damage each member of the Class incurred from Defendants' breaches of fiduciary duty and prohibited transactions, and such damages can be readily calculated based on business records maintained by Defendants.  Moreover, a class action is superior to other

available methods for the fair and efficient adjudication of this controversy.  Defendants have obtained wrongful profits through overcharges that are, on an individual level, small and difficult to detect but in the aggregate are an enormous drain on Class members' retirement assets. Individual participants who have invested in the Fixed Income Option, and even most Plans, have an insufficient stake in the outcome of this matter to devote the substantial resources that would be required to pursue it individually.

34.     On information and belief, the names and addresses of the Class members are available from Defendants and/or the Plans, and adequate notice can be provided to members of the class to the extent required by Fed. R. Civ. P. 23.

35.     Plaintiff is committed to fairly, adequately, and vigorously representing and protecting the interests of the members of the Class, and has retained counsel competent and experienced in class action litigation of this nature for this purpose.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**[Breach of Fiduciary Duty Under ERISA §§ 502(a)(2) and (a)(3),
29 U.S.C. §§ 1132(a)(2) and (a)(3), Against All Defendants]**

36.     Plaintiff incorporates Paragraphs 1-35 as though set forth herein.

37.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia,* that a plan fiduciary discharge his, her, or its duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

38.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia,* that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

39.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring an action for relief under ERISA § 409.

40.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring an action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

41.     Defendants breached their duties of loyalty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).  These breaches include but are not limited to the following:  (a) setting the Guaranteed Interest Rate and/or Composite Guaranteed Rate for their own benefit rather than for the benefit of the Plans and participants; (b) setting the credited rate artificially low; (c) misrepresenting the extent to which the rate was "guaranteed;" (d) failing to disclose their retention of the spread; and (e) charging an excessive disclosed fee in addition to the undisclosed compensation from the spread.

42.     Defendants have profited from the fiduciary violations alleged herein in an amount to be proven at trial.

43.     Defendants' actions caused losses to the Plans in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**[Engaging in Prohibited Transaction Forbidden by ERISA §§ 406(b),**
**29 U.S.C. §§ 1106(b), Against All Defendants]**

44.     Plaintiff incorporates Paragraphs 1-35 as though set forth herein.

45.     ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account."

46.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia,* that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

- 9 -

CLASS ACTION COMPLAINT

47.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

48.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

49.     Defendants are fiduciaries of the plans, as set forth in Paragraphs 24-26 above.

50.     Defendants engaged in prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b), by dealing with the Contract in their own interest or for their own account. Specifically, Defendants set the credited rate for their own benefit rather than for the benefit of the Plans and participants, and set the rate artificially low.

51.     Through the prohibited transactions, Defendants caused losses to the Plans in amounts to be proven at trial but numbering in the millions of dollars.

<u>THIRD CLAIM FOR RELIEF</u>
**[Engaging in Prohibited Transactions Forbidden by ERISA § 406(a),
29 U.S.C. § 1106(a)]**

52.     Plaintiff incorporates Paragraphs 1-35 as though set forth herein.

53.     ERISA § 406(a), 29 U.S.C. § 1106(a), requires that a plan fiduciary ö shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange, or leasing of any property between the plan and a party in interest,ö or a ö transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan.ö

54.     ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), defines any person providing services to an employee benefit plan as a party in interest.

55.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia,* that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such

other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

56.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409, 29 U.S.C. § 1109.

57.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

58.     By entering into the Contract with the Plans, and administering the Contract, Principal provided services to the Plans.  Accordingly, Defendants were parties in interest with respect to the Plans.  Moreover, Defendants were fiduciaries of the Plans, as set forth in Paragraphs 24-26 above.

59.     Defendants engaged in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), by selling the Contract to the Plans and receiving greater than reasonable compensation for the services provided pursuant to the Contract.  Defendants had discretion to set the credited rate and exercised their discretion to retain for themselves an excessive portion of the õspreadö between their investment earnings and the credited rate, in addition to charging excessive disclosed fees.

60.     Through the prohibited transactions, Defendants caused losses to the Plans in amounts to be proven at trial but numbering in the millions of dollars.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays as follows:

<u>**As to the First Claim for Relief:**</u>

A.      Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23;

B.      Declare that Defendants, and each of them, have breached their fiduciary duties to the Class and/or knowingly participated in breaches of fiduciary duty;

- 11 ̇6

C.      Enjoin Defendants, and each of them, from further violations of their fiduciary responsibilities, obligations, and duties;

D.      Order that Defendants make good to the Plans the losses resulting from their breaches of fiduciary duty;

E.      Order that Defendants provide other appropriate equitable relief to the Plans, including but not limited to surcharge, restitution, providing an accounting for profits, imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants, and/or ordering Defendants to disgorge any profits that it has made through breaches of fiduciary duty or knowing participation in breaches of fiduciary duty;

F.      Award Plaintiff reasonable attorneys⊘fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

G.      Order Defendants to pay prejudgment interest; and

H.      Award such other and further relief as the Court deems equitable and just.

**As to the Second Claim for Relief:**

A.      Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23;

B.      Declare that Defendants, and each of them, have breached their fiduciary responsibilities and/or duties as parties in interest to the Plaintiff Class;

C.      Enjoin Defendants, and each of them, from further prohibited transactions and violations of their fiduciary responsibilities, obligations, and duties;

D.      Declare that Defendants engaged in prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b), by dealing with the Contract in their own interest or for their own account;

E.      Order that Defendants make good to the Plans the losses resulting from these prohibited transactions;

F.      Order that Defendants disgorge any profits they have made through prohibited transactions and impose a constructive trust and/or equitable lien on any funds received by

Defendants in the course of or as a result of prohibited transactions;

G.     Order that Defendants provide other appropriate equitable relief to the plans, including but not limited to surcharge, restitution, providing an accounting for profits, imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants, and/or ordering Defendants to disgorge any profits that it has made through breaches of fiduciary duty or knowing participation in breaches of fiduciary duty;

H.     Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

I.     Order Defendants to pay prejudgment interest; and

J.     Award such other and further relief as the Court deems equitable and just.

**As to the Third Claim for Relief:**

A.     Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23;

B.     Declare that Defendants, and each of them, have breached their fiduciary responsibilities and/or duties as parties in interest to the Plaintiff Class;

C.     Enjoin Defendants, and each of them, from further prohibited transactions and violations of their fiduciary responsibilities, obligations, and duties;

D.     Declare that Defendants engaged in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), by selling the Contract to the Plans and receiving greater than reasonable compensation for the services provided pursuant to the Contract;

E.     Order that Defendants make good to the Plans the losses resulting from these prohibited transactions;

F.     Order that Defendants disgorge any profits they have made through prohibited transactions and impose a constructive trust and/or equitable lien on any funds received by Defendants in the course of or as a result of prohibited transactions;

G.     Order that Defendants provide other appropriate equitable relief to the Plans, including but not limited to surcharge, restitution, providing an accounting for profits, imposing

a constructive trust and/or equitable lien on any funds wrongfully held by Defendants, or ordering Defendants to disgorge any profits that it has made through breaches of fiduciary duty or knowing participation in breaches of fiduciary duty;

      H.     Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

      I.      Order Defendants to pay prejudgment interest; and

      J.     Award such other and further relief as the Court deems equitable and just.

Dated: _____           Respectfully submitted,


            By:       _____

                  J. Barton Goplerud
                  Brian O. Marty
                  HUDSON, MALLANEY, SHINDLER & ANDERSON P.C.
                  5015 Grand Ridge Drive, Suite 100
                  West Des Moines, IA 50265
                  Telephone:  (515) 223-4567
                  Facsimile:  (515) 223-8887
                  jbgoplerud@hudsonlaw.net
                  bmarty@hudsonlaw.net

                  Todd Jackson*
                  Nina Wasow*
                  Julie Wilensky*
                  LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
                  476 9th Street
                  Oakland, California 97607
                  Telephone:  (510) 839-6824
                  Facsimile:  (510) 839-7839
                  tjackson@lewisfeinberg.com
                  nwasow@lewisfeinberg.com
                  jwilensky@lewisfeinberg.com

Garrett W. Wotkyns*
Michael McKay*
SCHNEIDER WALLACE COTTRELL
KONECKY LLP
8501 N. Scottsdale Rd., Suite 270
Scottsdale, Arizona  85253
Telephone: (480) 428-0145
Facsimile: (866) 505-8036
gwotkyns@schneiderwallace.com
mmckay@schneiderwallace.com

Todd Schneider ó SBN 158253*
Mark Johnson ó SBN 76904*
SCHNEIDER WALLACE COTTRELL
KONECKY LLP
180 Montgomery Street, Ste. 2000
San Francisco, California  94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com
mjohnson@schneiderwallace.com

Christopher Micheletti*
Heather T. Rankie*
ZELLE HOFMANN VOELBEL &
MASON LLP
44 Montgomery Street, Suite 3400
San Francisco, California 94104
Telephone:  (415) 633-1912
Facsimile:  (415) 693-0770
cmicheletti@zelle.com
hrankie@zelle.com

*Pro Hac Vice application forthcoming

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT