# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| FREDERICK ROZO,<br><br>        Plaintiff,<br><br>v.<br><br>PRINCIPAL LIFE INSURANCE COMPANY,<br><br>        Defendant. | Case No.:<br><br>**FIRST AMENDED COMPLAINT**<br><br>**CLASS ACTION (ERISA)** |

## PRELIMINARY STATEMENT

1.    Guaranteed Investment Contracts ("GICs") are a financial product offered by insurance companies. Investors in GICs – in this case retirement plans – pay money in exchange for a contract promising a return on the investment. A GIC is a type of group annuity contract.

2.    Defendant Principal Life Insurance Company ("Principal") sold GICs to retirement plans in which Plaintiff and members of the proposed class are participants.

3.    Principal operates the Principal Fixed Income Guaranteed Option, also known as the Principal Fixed Income Option ("Fixed Income Option"). Retirement plans in which Plaintiff and the proposed class are participants and beneficiaries ("Plans") invest in the Fixed Income Option pursuant to a GIC that governs the relationship between the Plans and Principal, referred to herein as the "Contract." The Contract enables Principal to set its own compensation as a service provider to the Plans. Principal has exercised its discretionary authority to retain unreasonably large and/or excessive profits rather than crediting the participants and beneficiaries of the Plans with appropriate returns.

4.    Participants in Plans that invested in the Fixed Income Option are credited at an interest rate which Principal can set and change in its sole discretion. The rate is applied to all

participants in all Plans that invest in the Fixed Income Option. The Contract does not specify the rate, nor does it promise that the rate will not be reduced to zero, nor does it promise that the rate will remain in effect throughout the life of the Contract.

5. Throughout the relevant time period, Principal invested the monies it received pursuant to the Contract as it chose, and retained for itself the difference between the investment earnings of those assets and the interest it chose to credit to the Plans, otherwise known as "the spread." As stated in a Principal Annual Meeting 10K Report, "[a]ssets invested in GICs and funding agreements generate a spread between the investment income earned by us and the amount credited to the customer." Even while its earnings on the money paid by the Plans were in the hundreds of millions of dollars, Principal reduced the amount credited to the Plans and their participants. Principal retained the spread in addition to an already high disclosed fee for providing administrative and/or recordkeeping services to Plans. In other words, the Contract allowed Principal to set its own compensation as a service provider to the Plans, and to collect unreasonable and/or excessive fees from participants.

6. The Contract is a plan asset of the Plans holding it. Because Principal exercised discretionary authority over the administration of the Contract, including setting the credited rate, it owed fiduciary duties to Plan participants with respect to the Contract. Principal breached its fiduciary duties, and engaged in transactions prohibited under the Employee Retirement Income Security Act of 1974 (ERISA), by unilaterally setting its own compensation and by charging unreasonable and excessive fees incident to administering the Contract. In addition, as a party in interest under ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B) based on its providing services to the Plans, Principal also caused other Plan fiduciaries, including the Plans' sponsors, administrators and/or benefit committees, to enter into contracts with it that constituted prohibited transactions under ERISA § 406(a), 29 U.S.C. § 1106(a).

7. As a result of Principal's actions, the Plans' assets were diminished. Plaintiff seeks damages and equitable relief on behalf of the Class.

## JURISDICTION

8. Plaintiff brings this action pursuant to ERISA §§ 502(a)(2) and 502(a)(3), 29

U.S.C. §§ 1132(a)(2), (3). This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

## VENUE

9. Venue lies in the Southern District of Iowa pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendant resides or may be found in this District and/or the breaches alleged took place in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## THE PARTIES AND THE PLANS

10. At all relevant times, Plaintiff Frederick Rozo has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Western Exterminator Company Employees' 401(k) Profit Sharing Plan ("the WE Plan"). During 2008 to 2013, Mr. Rozo directed that assets allocated to his account in the WE Plan be invested in the Fund. Mr. Rozo resides in Rancho Santa Margarita, California.

11. At all relevant times, the WE Plan was an employee pension benefit plan within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). It was an individual account plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

12. At all relevant times, Defendant Principal Life Insurance Company was a wholly-owned subsidiary of Principal Financial Group, operating as an insurance company. Principal is headquartered in Des Moines, Iowa.

## FACTS

13. Principal offers Plans that invest in the Fixed Income Option a so-called "Guaranteed Interest Rate" defined as "the rate, which when credited and compounded daily, will produce the effective annual interest rate we Announce to you for the Guaranteed Interest Fund to which the Applicable Schedule relates." A Guaranteed Interest Fund is defined as the repository of deposits and interest established for each Plan. The Contract does not specify the Guaranteed Interest Rate or set forth a methodology for determining the rate, or set a floor below

which the Guaranteed Interest Rate cannot go.

14. The Contract also provides for a "Composite Crediting Rate," which is declared for each Deposit Period (the period of time within which deposits to a Guaranteed Interest Fund can be made, itself set forth in a schedule to the Contract). The Composite Crediting Rate is calculated using a methodology set forth in the Contract, which is based on the aggregate value and expected value of Guaranteed Interest Funds. Expected values are determined by Principal based on net cash flows accumulated with interest at the Guaranteed Interest Rate. The Contract sets no floor below which the Composite Crediting Rate cannot go. The Guaranteed Interest Rate and the Composite Crediting Rate are referred to in this Complaint collectively as the "credited rate."

15. The Contract provides that each Plan investing in the Fixed Income Option has a "Guarantee Period," set forth in a schedule to the Contract. However, Principal is not obligated to maintain the credited rate throughout the Guarantee Period. Principal is only required to maintain the Composite Crediting Rate from the first day to the last day of the Deposit Period, which in the WE Plan is six months. Under the Contract, Principal appears to have discretionary authority to change the Guaranteed Interest Rate at any time.

16. Nevertheless, Principal markets the Fixed Income Option to potential investors as providing "[a] declared interest rate – you know in advance what interest will be earned."

17. The Contract provides for a delay of 12 months or payment of a surrender charge if a Plan withdraws its interest in the Fixed Income Option. There are also limitations on participants' abilities to transfer funds to competing investments in their Plans. Specifically, participants are subject to an "Equity Wash," meaning they must first transfer funds to a non-competing investment option for a stated period of time. Essentially all fixed-income and cash equivalent investments are defined as competing investment options, so if they no longer wish to invest in the Fixed Income Option, participants are forced to switch to a higher-risk investment first. Thus, participants in the Plans are highly vulnerable to Principal's decision to change the credited rate.

18. Funds paid to Principal by Plans pursuant to the Contract are deposited and held

- 4 –

in Principal's general account, and largely invested in bonds and other low-risk investments. The Contract places no limits on Principal's ability to invest assets held in its general account.

19. Principal makes billions of dollars annually from investment of assets held in its general account. Principal Life's annual reports state that net investment income in 2010 was $3,063,216,474; net investment income in 2011 was $2,978,691,607; net investment income in 2012 was $2,898,475,365; and net investment income in 2013 was $2,739,450,935.

20. Meanwhile, Principal reduced the credited rate to Plans continuously and precipitously between 2008 and 2014. In June 2008 the net crediting rate (crediting rate less fees for administrative and recordkeeping services) was 3.95%; by June 2010 it had dropped to 2.55%, and by June 2013 it had dropped to 1.35%. Thus, while Principal's net investment income from its general account declined by about 10.5% from 2010 to 2013, Principal unreasonably reduced the net crediting rate and plan participant earnings by about 47% over the same period. The difference between general account investment earnings and interest credited to the Plans was pure profit to Principal. Upon information and belief, during the relevant time period Principal made between $90 and $160 million annually from GICs held by retirement plans.

21. Plan documents and promotional materials fail to disclose that Principal can and does retain the difference between the interest rate it chooses to credit to the Plans and its actual investment earnings on the funds it invests from the Plans.

22. In addition to the undisclosed compensation it received based on the spread between the credited rate and actual investment earnings, Principal required Plans to pay a fee for administrative and recordkeeping services. The amount of this fee is estimated in promotional materials for the Fixed Income Option as 65 basis points. The Contract is vague with respect to what services participants receive in exchange for this fee. The fee is excessive.

23. Notwithstanding the inclusion of "Guarantee" in its name, the Contract does not guarantee payment of any particular benefit to Plans or their participants. Instead, it promises an unspecified rate of return for a period of time, but investment risk incident to the Contract is borne by the Plans because Principal can change the credited rate in its sole discretion, and

Principal's investment decisions and actions affect the value of the Contract. Indeed, the actual and realized benefit to the Plans is, by the terms of the Contract itself, fundamentally contingent on investment decisions made by Principal.

24. ERISA defines a "fiduciary" as anyone who exercises authority or control over the management or disposition of plan assets. 29 U.S.C. § 1002(21)(a).

25. The Contract itself is a plan asset: It is entered into by the Plans in order to provide income to participants.

26. The Contract gives Principal authority to determine the Guaranteed Interest Rate and the Composite Guaranteed Rate. Thus, Principal is a fiduciary of the Plans with respect to its management and administration of the Contract.

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action as a class action pursuant to Rules 23(a) and 23(b)(1) or, in the alternative, 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of similarly situated persons ("the Class"):

> All participants in and beneficiaries of defined contribution employee pension benefit plans within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), who had funds invested in the Fixed Income Option from six years before the filing of this action until the time of trial.

28. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are, at a minimum, thousands of members of the Class.

29. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among such questions are:

    (a)    Whether Principal is a party in interest with respect to the Plans;

    (b)    Whether Principal is a fiduciary of the Plans;

    (c)    Whether the Contract gives Principal authority to determine the amount of its own

compensation;

    (d)    Whether Principal set the credited rate artificially low for its own benefit rather than for the benefit of Plans and participants; and

    (e)    Whether the compensation paid to Principal under the Contract is unreasonable or excessive.

30.    There are no substantial individual questions among the Class claims on the merits of this action, and Plaintiff is not aware of any conflicts between himself and the putative Class members.

31.    Plaintiff's claims are typical of the claims of the members of the putative Class, as Plaintiff and all other members of the putative class were harmed by Principal's wrongful conduct. Plaintiff is aggrieved by the prohibited transactions and breaches of fiduciary duties he and all other Class members have suffered at Principal's hands, and is intent on seeing such wrongs remedied. Neither Plaintiff nor his counsel have any interests that might cause them to refrain from vigorously pursuing the claims in this Class action. Thus, Plaintiff is an adequate representative of the Class.

32.    Class certification of Plaintiff's Claims for Relief is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Principal, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

33.    In the alternative, class certification of Plaintiff's Claims for Relief also is appropriate under Fed. R. Civ. P. 23(b)(3) because common issues of law and fact predominate over questions affecting only individual members of the Class. The only individualized issues will be the amount of damage each member of the Class incurred from Principal's breaches of fiduciary duty and prohibited transactions, and such damages can be readily calculated based on business records maintained by Principal. Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Principal has obtained wrongful profits through overcharges that are, on an individual level, small and difficult to detect

but in the aggregate are an enormous drain on Class members' retirement assets. Individual participants who have invested in the Fixed Income Option, and even most Plans, have an insufficient stake in the outcome of this matter to devote the substantial resources that would be required to pursue it individually.

34. On information and belief, the names and addresses of the Class members are available from Principal and/or the Plans, and adequate notice can be provided to members of the class to the extent required by Fed. R. Civ. P. 23.

35. Plaintiff is committed to fairly, adequately, and vigorously representing and protecting the interests of the members of the Class, and has retained counsel competent and experienced in class action litigation of this nature for this purpose.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**[Breach of Fiduciary Duty Under ERISA §§ 502(a)(2) and (a)(3), 29 U.S.C. §§ 1132(a)(2) and (a)(3)]**

36. Plaintiff incorporates Paragraphs 1-35 as though set forth herein.

37. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia,* that a plan fiduciary discharge his, her, or its duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

38. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia,* that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

39. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring an action for relief under ERISA § 409.

40. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring an action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

41. Principal breached its duty of loyalty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). These breaches include but are not limited to the following: (a) setting the Guaranteed Interest Rate and/or Composite Guaranteed Rate for its own benefit rather than for the benefit of the Plans and participants; (b) setting the credited rate artificially low; (c) misrepresenting the extent to which the rate was "guaranteed;" (d) failing to disclose its retention of the spread; and (e) charging an excessive disclosed fee in addition to the undisclosed compensation from the spread.

42. Principal has profited from the fiduciary violations alleged herein in an amount to be proven at trial.

43. Principal's actions caused losses to the Plans in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**[Engaging in Prohibited Transaction Forbidden by ERISA §§ 406(b),**
**29 U.S.C. §§ 1106(b)]**

44. Plaintiff incorporates Paragraphs 1-35 as though set forth herein.

45. ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account."

46. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia,* that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

47. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

48. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

49. Principal is a fiduciary of the plans, as set forth in Paragraphs 24-26 above.

50. Principal engaged in prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b), by dealing with the Contract in its own interest or for its own account. Specifically, Principal set the credited rate to ensure its own profit rather than for the benefit of the Plans and participants, and set the rate artificially low.

51. Through the prohibited transactions, Principal caused losses to the Plans in amounts to be proven at trial but numbering in the millions of dollars.

### THIRD CLAIM FOR RELIEF (IN THE ALTERNATIVE)
[In Defendant's Capacity as a Party In Interest, Engaging in Prohibited Transactions Forbidden by ERISA § 406(a), 29 U.S.C. § 1106(a)]

52. Plaintiff incorporates Paragraphs 1-35 as though set forth herein.

53. ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B), defines any person providing services to an employee benefit plan as a party in interest.

54. ERISA § 406(a), 29 U.S.C. § 1106(a), prohibits direct or indirect sales or exchanges between a plan and a party in interest.

55. Under the Contract, Principal provides investment management and/or recordkeeping services to the Plans. By entering into the Contract with the Plans, and administering the Contract, Principal provided services to the Plans. Accordingly, Principal is a party in interest with respect to the Plans.

56. Principal understood that it would receive millions of dollars in compensation from the Plans by retaining an excessive portion of the investment earnings derived from the Fund. Principal's failure to properly disclose this compensation caused the Plans to engage in

CLASS ACTION COMPLAINT

transactions with Principal for the furnishing of services to the Plans, that are prohibited under ERISA § 406(a), 29 U.S.C. § 1106(a).

57. Entering into the Contract was a violation of ERISA § 406(a), 29 U.S.C. § 1106(a), because it was a direct sale or exchange between the plan and a party in interest and/or a transfer or use of plan assets to or by or for the benefit of a party in interest, namely, Principal.

58. Principal knowingly caused the plans to enter into the Contract, and thus knowingly participated in such prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a).

59. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA. Plaintiff is entitled to equitable relief from Principal based on its knowing participation in prohibited transactions in its capacity as a party in interest.

60. Through its knowing participation in prohibited transactions, Defendant caused losses to the Plans in amounts to be proven at trial but numbering in the millions of dollars.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays as follows:

**As to the First Claim for Relief:**

A. Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23;

B. Declare that Defendant has breached its fiduciary duties to the Class and/or knowingly participated in breaches of fiduciary duty;

C. Enjoin Defendant from further violations of its fiduciary responsibilities, obligations, and duties;

D. Order that Defendant make good to the Plans the losses resulting from its breaches of fiduciary duty;

E. Order that Defendant provide other appropriate equitable relief to the Plans, including but not limited to surcharge, restitution, providing an accounting for profits, imposing

a constructive trust and/or equitable lien on any funds wrongfully held by Defendant, and/or ordering Defendant to disgorge any profits that it has made through breaches of fiduciary duty or knowing participation in breaches of fiduciary duty;

  F. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

  G. Order Defendant to pay prejudgment interest; and

  H. Award such other and further relief as the Court deems equitable and just.

**As to the Second Claim for Relief:**

  A. Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23;

  B. Declare that Defendant has breached its fiduciary responsibilities and/or duties as a party in interest to the Plaintiff Class;

  C. Enjoin Defendant from further prohibited transactions and violations of its fiduciary responsibilities, obligations, and duties;

  D. Declare that Defendant engaged in prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b), by dealing with the Contract in its own interest or for its own account;

  E. Order that Defendant make good to the Plans the losses resulting from these prohibited transactions;

  F. Order that Defendant disgorge any profits it has made through prohibited transactions and impose a constructive trust and/or equitable lien on any funds received by Defendant in the course of or as a result of prohibited transactions;

  G. Order that Defendant provide other appropriate equitable relief to the plans, including but not limited to surcharge, restitution, providing an accounting for profits, imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendant, and/or ordering Defendant to disgorge any profits that it has made through breaches of fiduciary duty or knowing participation in breaches of fiduciary duty;

CLASS ACTION COMPLAINT

H. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

I. Order Defendant to pay prejudgment interest; and

J. Award such other and further relief as the Court deems equitable and just.

**As to the Third Claim for Relief:**

A. Certify this action as a class action pursuant to Federal Rule of Civil Procedure 23;

B. Declare that Defendant has violated ERISA in its capacity as a party in interest to the plans;

C. Declare that Defendant engaged in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), by selling the Contract to the Plans;

D. Enjoin Defendant from further prohibited transactions;

F. Order Defendant to disgorge any profits it has made through knowing participation in prohibited transactions and impose a constructive trust and/or equitable lien on any funds received by Defendant in the course of or as a result of prohibited transactions;

G. Order that Defendant provide other appropriate equitable relief to the Plans, including but not limited to restitution and providing an accounting for profits;

H. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

I. Order Defendant to pay prejudgment interest; and

J. Award such other and further relief as the Court deems equitable and just.

Dated: October 26, 2015                               Respectfully submitted,


                                                      By:    _/s/ Nina Wasow_____

J. Barton Goplerud
Brian O. Marty
HUDSON, MALLANEY, SHINDLER &
ANDERSON P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Telephone: (515) 223-4567
Facsimile: (515) 223-8887
jbgoplerud@hudsonlaw.net
bmarty@hudsonlaw.net

Todd Jackson
Nina Wasow
LEWIS, FEINBERG, LEE
& JACKSON, P.C.
476 9th Street
Oakland, California 97607
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
tjackson@lewisfeinberg.com
nwasow@lewisfeinberg.com

Garrett W. Wotkyns
Michael McKay
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
8501 N. Scottsdale Rd., Suite 270
Scottsdale, Arizona 85253
Telephone: (480) 428-0145
Facsimile: (866) 505-8036
gwotkyns@schneiderwallace.com
mmckay@schneiderwallace.com

Todd Schneider
Mark Johnson
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com
mjohnson@schneiderwallace.com

Christopher Micheletti
Heather T. Rankie
ZELLE HOFMANN VOELBEL &
MASON LLP
44 Montgomery Street, Suite 3400
San Francisco, California 94104
Telephone: (415) 633-1912
Facsimile: (415) 693-0770

CLASS ACTION COMPLAINT

cmicheletti@zelle.com
hrankie@zelle.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT